IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | |
|---|---|
| v. | CRIMINAL NO. 08-486 |
| RAMON SANCHEZ | |

## MEMORANDUM OPINION

**Schmehl, J.** */s/JLS*  July 9, 2021

Before the Court is a *pro se* motion filed by Defendant Sanchez that seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). The Government has filed a response, and Defendant's motion is now ready for decision.

I. **STATEMENT OF FACTS**

On November 3, 2010, Sanchez pled guilty to attempted Hobbs Act robbery in violation of 18 U.S.C. § 1951(a), using and carrying a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c), and possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1). These charges arose from a 2008 attempted robbery of a convenience store in Reading, Pennsylvania at which Sanchez was armed with a semiautomatic pistol. After fleeing the convenience store, he drew his gun on a police officer who attempted to take him into custody and refused to drop his weapon, resulting in the officer shooting him two times.

Sanchez was sentenced on April 4, 2013, and the Court determined that Sanchez fell into Criminal History Category IV, that the offense level for his crimes was 23, that he faced a guideline range of 70 to 84 months on Counts One and Three, that he

additionally faced a mandatory consecutive sentence of 84 months on Count Two, and thus that the final guidelines range was 154–171 months. The Court then granted the government's motion for an upward variance given the danger that Sanchez presented to a police officer and others, and increased Sanchez's offense level to 25. Sanchez's final guideline range was thus 168–189 months and Judge Stengel imposed a guideline sentence of 189 months.

Sanchez has been in prison for most of his adult life. As a young man, he incurred a number of convictions, and short prison sentences, as follows:

1984 – age 16 – robbery with a firearm (tried as an adult)

1986 – age 18 – possession of marijuana

1986 – age 18 – disorderly conduct (found in possession of 61 vials of crack cocaine and two chukka sticks)

1986 – age 18 – attempted criminal sale of a controlled substance

1987 – age 19 – criminal sale of a controlled substance

1990 – age 22 – possession of cocaine

Then, in 1992, at age 24, he was charged in this district with distribution of cocaine, and possession of a firearm by a convicted felon, based on his conduct in arranging the straw purchase of weapons, and the sale of drugs and firearms to an undercover officer. He was sentenced by Judge Van Antwerpen to 168 months' imprisonment in that case, and three years' supervised release. While he was in prison serving that sentence, in 2002, he was charged in the Middle District of Pennsylvania with attempted bribery of a correctional officer. For that crime, to which he pled guilty, he was sentenced to a term of 24 months, to run consecutively to the EDPA sentence.

He completed the federal sentences and was released from prison on December 16, 2006, to a halfway house. His term of supervised release began on March 15, 2007. There were continual compliance problems, until Sanchez absconded from supervision entirely in December 2007. He then committed the instant offenses on July 13, 2008.

Judge Surrick, to whom the 1992 case (No. 92-490) was assigned in 2007, found Sanchez in violation of supervised release based on the new criminal conduct at issue here. On April 12, 2013, eight days after the imposition of sentence in this case, Judge Surrick imposed a term of imprisonment of five years, to run consecutively to the term imposed here.

Sanchez is presently held at Beaumont Medium FCI. He has served approximately 154 months and has credit for good conduct time of approximately 16 months, and thus has served approximately 170 months of the 189-month term imposed by Judge Stengel in this case. If he earns all available good conduct time, that sentence will expire on May 19, 2022. At that point, he will begin serving the five-year term for violation of supervised release. If he earns all available good conduct time, that sentence will expire on August 21, 2026. Thus, at present, Sanchez has more than five years remaining to serve in federal prison. Further, during his current term of incarceration, he has committed a dozen disciplinary infractions.

On June 1, 2020, Sanchez submitted a request for compassionate release to the warden, and on June 22, 2020, the warden denied Sanchez's request. Subsequently, on August 18, 2020, Sanchez filed this *pro se* motion for compassionate release, which he captions as a "motion for consideration under 5H1.4 physical condition." In this motion he claims to suffer from "abnormal at best" breathing due to bullet fragments in his right

3

lung, and damage to the ribs and associated numbness of his right chest, and an incurable type of tuberculosis (ECF No. 78, pp. 2-3). He also claims to suffer from "a seriously debilitating heart condition" (*Id.* at 4). On February 3, 2021, Sanchez filed a second *pro se* motion for compassionate release (ECF No. 88), and on March 22, 2021, Sanchez filed a third *pro se* motion for compassionate release that he calls a "motion requesting federal court immediately intervenes in not allowing (F.B.O.P.) Federal Bureau of Prisons, (F.C.I.) Federal Correctional Institution Beaumont to simply allow for Ramon Emilio Sanchez Jr. to die due to actual/deliberate medical neglect." (ECF No. 89.)

The government responded to Sanchez's compassionate release motion and provided his medical records from the Bureau of Prisons. The records show that Sanchez, who is 53 years old, suffers from mild (stage two) chronic kidney disease and kidney stones and chronic pain from a gunshot wound. He was treated prophylactically for latent tuberculosis infection 22 years ago, but never suffered from actual tuberculosis. (ECF No. 93.)

His medical record also show no history of shortness of breath or breathing difficulties, and on August 25, 2020, a BOP doctor wrote "Sanchez also notes breathing issues from his GSW from several decades but this is not a credible complaint – he has no smoking history and this seems covid driven as it is new onset." ECF No. 93, p. 163.

Sanchez's medical records also show that he suffers from a first degree atrioventricular heart block, which is when the electrical impulse moves through the heart's AV node more slowly than normal. This usually results in a slower heart rate, which may cause dizziness or lightheadedness, or no symptoms at all. In August of 2019, Sanchez had an EKG that indicated this condition had resolved. *Id.*

4

## II. LEGAL AUTHORITY

The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act on December 21, 2018, provides in pertinent part:

> (c) Modification of an Imposed Term of Imprisonment.—The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

The relevant Sentencing Guidelines policy statement appears at § 1B1.13, and provides that the Court may grant release if "extraordinary and compelling circumstances" exist, "after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable," and the Court determines that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." In application note 1 to the policy statement, the Commission identifies "extraordinary and compelling reasons" that may justify compassionate release as follows:

> 1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2) [regarding

5

absence of danger to the community], extraordinary and compelling reasons exist under any of the circumstances set forth below:

(A) Medical Condition of the Defendant.—

(i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is—

(I) suffering from a serious physical or medical condition,

(II) suffering from a serious functional or cognitive impairment, or

(III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) Age of the Defendant.—The defendant

(i) is at least 65 years old;

(ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and

(iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) Family Circumstances.—

(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

(ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the

6

> > only available caregiver for the spouse or registered partner.
>
> > (D) Other Reasons.— As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

Generally, the defendant has the burden to show circumstances that meet the test for compassionate release. *United States v. Heromin*, 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019); *United States v. Stowe*, 2019 WL 4673725, at *2 (S.D. Tex. Sept. 25, 2019). The Third Circuit held: "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). *See also United States v. Roeder*, 807 F. App'x 157, 160-61 (3d Cir. 2020) (per curiam) (not precedential) ("the existence of a widespread health risk is not, without more, a sufficient reason for every individual subject to a properly imposed federal sentence of imprisonment to avoid or substantially delay reporting for that sentence."), *id.* at 161 n.16 ("Similarly, the existence of some health risk to every federal prisoner as the result of this global pandemic does not, without more, provide the sole basis for granting release to each and every prisoner within our Circuit.").

If a defendant's medical condition is found to be the type of condition that puts a defendant at the increased risk of an adverse outcome from COVID-19, a court must next analyze the factors under section 3553(a) and the Sentencing Commission's policy statement. Section 3582(c)(1)(A) requires a court to consider the "factors set forth in section 3553(a) to the extent they are applicable" before a sentence may be reduced.

These factors require a determination of whether the sentence served "reflect[s] the nature and circumstances of the offense and the history and characteristics of the defendant;" "reflect[s] the seriousness of the offense;" "promote[s] respect of the law;" and "afford[s] adequate deterrence to criminal conduct." The statute also instructs a court to consider the Sentencing Commission's policy statement, which allows a sentence reduction only if "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13.

### III. **DISCUSSION**

As stated above, Sanchez asserts that he suffers from a condition that is a CDC risk factor in relation to COVID-19. As noted earlier, Sanchez's claims of breathing difficulties and a heart condition are not supported by the records. His latent tuberculosis is not a CDC risk factor. *See, e.g..*, *United States v. Spikes*, 2020 WL 6044614, at *5 (E.D. Pa. Oct. 13, 2020) (Pratter, J.). However, his condition of stage 2 chronic kidney disease is a risk factor, and places him at greater risk of an adverse outcome from COVID-19. Accordingly, Sanchez does present an "extraordinary and compelling reason" for relief.

The analysis does not end there however, as I also must examine the 3553(a) factors and Sanchez's possible danger to the community. In examining these factors, I must evaluate whether the sentence served reflects the nature and circumstances of the offense and the history and characteristics of the defendant, reflects the seriousness of the offense, promotes respect of the law, and affords adequate deterrence to criminal conduct.

First, including good time credit, Sanchez has served approximately 170 months of his 189-month sentence. However, he then has an additional 60 months to serve after

8

the 189 months ends due to his violation of supervised release, making his actual sentence 249 months. Accordingly, he has served approximately 14 years of a nearly 21-year sentence, or less than seventy percent of his estimated sentence.

Further, Sanchez has spent his entire adult life either committing crimes or in prison and continues to present a danger to the community. After a string of minor criminal offenses, he received a 168-month federal sentence in 1992 for drug and firearm violations. While serving that sentence, he incurred another conviction for attempting to bribe a correctional officer. When he was released in 2007, he absconded from supervision in a matter of months, and then soon after was arrested for the instant offenses, during which he drew a gun on a police officer and was himself shot when he refused to drop his gun. Given all these circumstances, a reduction of Sanchez's sentence is unwarranted. Sanchez is a career criminal and continued incarceration is necessary to reflect the seriousness of the offenses, promote respect for the law, and provide just punishment for the offenses. *See e.g. United States v. Martin*, 2020 WL 3960433 (E.D. Pa. July 13, 2020) (Kearney, J.) (defendant committed a felony murder at age 18, a bank robbery at age 34, and then another bank robbery at age 44 for which he received a three-strikes life sentence; now, at age 66, he is suffering from COPD, asthma, obesity, coronary artery disease, ischemic cardiomyopathy, a blood clot in his heart, hypertension, and high cholesterol, but relief is denied due to his violent history); *United States v. Spencer*, 2020 WL 6504578 (E.D. Pa. Nov. 5, 2020) (Beetlestone, J.) (64-year-old presents COPD, and has served over 20 years of a life sentence for ten armed robberies; release is denied given the nature of the offenses and his criminal record); *United States v. Millhouse*, 2020 WL 6799170 (E.D. Pa. Nov. 19, 2020) (Sanchez, C.J.) (relief denied

after 170 months of 894-month sentence for violent robberies; he presents no risk factors; in addition, the robberies were violent, he attacked his court-appointed attorney with a razor blade in a proffer room, and he has 69 disciplinary infractions).

Further, the Federal Bureau of Prisons, as of the date of this opinion, reports that there are 4,853 inmates housed at Beaumont FCC, which consists of FCI Beaumont Low and an adjacent low security satellite camp, FCI Beaumont Medium (where Sanchez is housed) and USP Beaumont, a high security facility. FEDERAL BUREAU OF PRISONS, *Beaumont FCC*, https://www.bop.gov/locations/list.jsp (last visited on July 9, 2021). As of the date of this opinion, only 6 staff members and no inmates are infected with COVID-19 at all three locations within Beaumont FCC. FEDERAL BUREAU OF PRISONS, *COVID-19 Coronavirus*, https://www.bop.gov/coronavirus/ (last visited on July 9, 2021). Further, there are 358 staff members and 2,621 inmates at Beaumont FCC who have received COVID-19 vaccinations. FEDERAL BUREAU OF PRISONS, *Beaumont FCC*, https://www.bop.gov/coronavirus/ (last visited on July 9, 2021). According to the BOP, it "is committed to making the vaccine available to all staff and inmates who wish to receive it as quickly as possible." (*Id*.)

Accordingly, even though Sanchez's stage 2 chronic kidney disease may increase his likelihood of an adverse outcome from COVID-19, when considering the 3553 factors, his danger to the community, the low case numbers at Beaumont FCC and the availability of vaccines to inmates such as Sanchez, he does not warrant a sentence reduction or release in any fashion at the present time.

IV. **CONCLUSION**

For the foregoing reasons, Sanchez's motion for compassionate release is denied.

10